HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DAVID R. GELINAS, *et al.*,

    Plaintiffs,

v.

BANK OF AMERICA, N.A., *et al.*,

    Defendants.

Case No. 16-1355-RAJ

ORDER

## I. INTRODUCTION

This matter comes before the Court on Defendants Bank of America, N.A. ("BANA"), HSBC Bank, USA, National Association ("HSBC"), Mortgage Electronic Registration Systems, Inc.'s ("MERS") Motion to Dismiss Plaintiffs' Complaint (collectively "Defendants") (Dkt. # 10) and Defendant Quality Loan Services Corporation of Washington's ("QLS") Motion to Dismiss (Dkt. # 9). For the reasons that follow, the Court **GRANTS** the motions.

## II. BACKGROUND[1]

On December 9, 2006, Plaintiffs took out a mortgage loan for $460,000.00 from

---

[1] As noted below, the Court, in accordance with Fed. R. Evid. 201, takes judicial notice of certain documents. *Infra* § IV.A.

ORDER – 1

Express Capital Lending. Dkt. # 1 ¶ 17. Plaintiffs' loan is secured by a Deed of Trust ("DOT") on real property, which is located at 6829 Skipley Road, Snohomish, WA 98290 ("Property"). *Id.*; Dkt. # 11, Ex. A. The DOT names Plaintiffs as the borrowers, Express Capital Lending as the lender, First American Title as the trustee, and MERS as the beneficiary. Dkt. # 11, Ex. A. On September 28, 2011, MERS recorded an Assignment of Deed of Trust and assigned the DOT to BANA. *Id.*, Ex. B; Dkt. # 1 ¶ 19. Then, on January 10, 2013, BANA recorded an Assignment of Deed of Trust and assigned the DOT to HSBC. Dkt. # 11, Ex. C. On February 21, 2014, HSBC recorded an Appointment of Successor Trustee, appointing QLS as the successor of title. *Id.*, Ex. D.

On November 26, 2014, QLS recorded a Notice of Trustee's Sale scheduling a sale for March 27, 2015, because Plaintiffs were in default of their loan. *Id.*, Ex. E. The Notice of Trustee's Sale documented that Plaintiffs owed $131,936.56 on their loan payments. *Id.* However, the March 2015 sale did not take place, and QLS recorded a second Notice of Trustee's Sale on February 8, 2016. *Id.*, Ex. F; Dkt. # 1 ¶ 23. By then, Plaintiffs' were $173,599.90 in arrears. *Id.*

Plaintiffs assert that they submitted a loan modification application to BANA on June 3, 2016. Dkt. # 1 ¶ 25. Plaintiffs claim they are in weekly communications with Ms. Angie Fortunity of BANA's loss mitigation department and that their file is "open and active." *Id.* However, they admit that they "have not provided all required information requested on [their loan modification application]." *Id.* ¶ 26. Plaintiffs filed this lawsuit on August 26, 2016. Dkt. # 1.

### III.  LEGAL STANDARD

Rule 12(b)(6) permits a court to dismiss a complaint for failure to state a claim. The rule requires the court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). A court "need not accept as true conclusory allegations

ORDER – 2

that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id.* at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Where a plaintiff proceeds *pro se*, the court must construe his "complaints liberally even when evaluating it under the *Iqbal* standard." *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1011 (9th Cir. 2011) (citing *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)).

## IV.  DISCUSSION

Plaintiffs allege six causes of action in their Complaint: (1) quiet title, (2) violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 C.F.R. 1024.41(g), (3) violation of the Washington Consumer Protection Act ("CPA"), RCW ch. 19.86, (4) declaratory judgment, (5) slander of title, and (6) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e(5). Dkt. # 1.

**A.   Judicial Notice**

Defendants request that the Court take judicial notice of certain documents. Among these documents are (1) the deed of trust (Dkt. # 11, Ex. A; Snohomish County Auditor Instrument # 200701080572); (2) two recordings of the assignment of the deed of trust (*id.*, Exs. B, C; ## 201109280477, 201301100083); (3) a recorded appointment of successor trustee (*id.*, Ex. D; # 201402210257); and (4) two recorded notices of trustee sale (*id.*, Exs. E, F; ## 201411260230, 201602080244).[2] Each of these documents is available at http://snohomishcountywa.gov/176/Auditor.

---

[2] QLS also requests that the court take notice of the deed of trust (Dkt. # 11, Ex. A), the assignment of the deed of trust (*id.*, Ex. C), the recorded appointment of successor trustee (*id.*, Ex. D); and the two recorded notices of trustee sale (*id.*, Exs. E, F). Dkt # 9 at 2. Because QLS's request overlaps with Defendants' request, the Court will address only Defendants' request.

ORDER – 3

When resolving a motion to dismiss, a court typically cannot consider evidence beyond the four corners of the complaint. It may, however, consider certain materials, including those subject to judicial notice, without converting the motion into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Under Rule 201, a court may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Certain public records qualify under the second category, including the "records and reports of administrative bodies." *Ritchie*, 342 F.3d at 909 (quoting *Interstate Nat. Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953)).

Here, the Court takes judicial notice of the foregoing publically recorded Snohomish County documents. The contents of these documents are not subject to reasonable dispute, as they "are authentic documents recorded with a governmental agency." *Gelinas v. U.S. Bank, NA*, No. 16-1468-JLR, 2017 WL 553277, at *3 (W.D. Wash. Feb. 10, 2017).[3]

## B.   Quiet Title Claim

Plaintiffs assert a claim for quiet title. Dkt. # 1 ¶ 23. They allege that Defendants have no interest in the Property because the assignment recorded on September 28, 2011 is invalid. *Id.* Plaintiffs argue that if the assignment is invalid, then the subsequently recorded documents are also invalid. *Id.* They thus allege that Defendants should be prevented from foreclosing on Plaintiffs' Property. *Id.* Defendants argue that Plaintiffs' claim fails because Plaintiffs have not paid their debt. Dkt. # 10 at 8.

The purpose of a quiet title action is to resolve competing claims of ownership of real property. *Kobza v. Tripp*, 105 Wash. App. 90, 95 (2001). In order for Plaintiffs to succeed on a quiet title claim, Plaintiffs must first allege that they "are the rightful owners

---

[3] A separate property and agreement was at issue in *Gelinas*, 2017 WL 553277, at *8.

ORDER – 4

of the property, i.e., that they have satisfied their obligations under the Deed of Trust." *Santos v. Countrywide Home Loans*, No. CIV.20902642WBS DAD, 2009 WL 3756337, at *4 (E.D. Cal. Nov. 6, 2009) (quoting *Kelley v. Mortgage Elec. Reg. Sys., Inc.*, 642 F.2d 1048, 1057 (N.D. Cal. 2009)); *see also Borowski v. BNC Mortgage, Inc.*, No. C12-5867 RJB, 2013 WL 4522253, at *4 (W.D. Wash. Aug. 27, 2013) (stating that because plaintiff owed an outstanding balance on his mortgage loan, he had not met the required prerequisite for a quiet title action). In other words, to bring a quiet title claim, Plaintiffs must first allege facts demonstrating they have paid their outstanding debt.

Plaintiffs have not alleged facts asserting they have paid their outstanding debt. In their Complaint, Plaintiffs state that "the disputed mortgage at issue" totals $493,546.00. Dkt. # 1 at ¶ 10. The Notice of Trustee's Sale shows that Plaintiffs owe $173,599.90 as of February 8, 2016. (Dkt. # 11, Ex. F). In their reply brief, Plaintiffs allege no facts asserting they have paid their outstanding debt. Dkt. # 13.

As an additional basis for dismissal, Defendants argue that Plaintiffs' claim fails because they lack standing to challenge the validity of an assignment of their deed of trust. Dkt. # 10 at 6. The Court agrees. In Washington, Plaintiffs, as third parties, lack standing to challenge the chain of their Assignment unless they can show that they are at risk of paying the same debt twice. *Borowski*, 2013 WL 4522253, at *5.

Plaintiffs have not alleged that they are at risk of paying the same debt twice. Therefore, Plaintiffs do not have standing to challenge the chain of their Assignment. *Ukpoma v. U.S. Bank Nat. Ass'n*, No. 12-CV-0184-TOR, 2013 WL 1934172, at *4 (E.D. Wash. May 9, 2013) ("[e]ven assuming for the sake of argument that the assignments in question were fraudulently executed, Plaintiff, as a third party, lacks standing to challenge them."); *Borowski*, 2013 WL 4522253, at *5 (stating that there "is ample authority that borrowers, as third parties to the assignment of their mortgage (and securitization process), cannot mount a challenge to the chain of assignments unless a borrower has a genuine claim that they are at risk of paying the same debt twice if the

ORDER – 5

assignment stands").

In summary, the Court **DIMISSES** Plaintiffs' claim for quiet title because (1) Plaintiffs have not pleaded facts asserting they have paid their outstanding debt; and (2) Plaintiffs lack standing to challenge the chain of their Assignment, and they have not alleged that they are in risk of paying the same debt twice.

**C.    RESPA Claims**

1. Claim Under 12 C.F.R. 1024.41(g)

Plaintiffs allege that BANA violated a provision of RESPA, 12 C.F.R. 1024.41(g), because BANA did not cancel the foreclosure sale scheduled for July 15, 2016.  Dkt. # 1 ¶¶ 15, 25-37.  Plaintiffs argue that BANA's failure to cancel the foreclosure sale was wrongful because Plaintiffs faxed a loan modification application to BANA on June 3, 2016, more than 37 days before the sale date.  *Id.* ¶¶ 15, 25.  Defendants argue this claim should be dismissed because the applicable RESPA provision requires Plaintiffs to have first submitted a "complete loss mitigation application," *see* 12 C.F.R. 1024.41(g), yet Plaintiffs have not complied with this requirement.

Under the loss mitigation provision, RESPA prohibits foreclosure sales in certain situations:

> If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless:
>
> (1) The servicer has sent the borrower a notice . . . that the borrower is not eligible for any loss mitigation option and the appeal process . . . is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;

ORDER – 6

    (2) The borrower rejects all loss mitigation options offered by the servicer; or

    (3) The borrower fails to perform under an agreement on a loss mitigation option.

12 C.F.R. 1024.41(g).  The language of the provision plainly establishes that a "complete loss mitigation application" is required for the RESPA provision to apply.[4]

  Plaintiffs do not allege they submitted a complete loan application to BANA.  Dkt. # 1 ¶ 26.  In their Complaint, Plaintiffs concede that they "have not provided all required information requested on [the] RMA [Request for Mortgage Assistance] application."  *Id.*  Plaintiffs allege they were in weekly communication with Ms. Angie Fortunity of BANA's loss mitigation department.  *Id.* ¶¶ 25, 26.  Plaintiffs also claim they were "in the midst" of an open loan modification.  *Id.* ¶ 31; Dkt. # 13 ¶ 9.  However, in order for RESPA's foreclosure prohibition to apply, Plaintiffs must first allege facts that they submitted a complete loan application.  They have not done so.

  Because Plaintiffs have not pleaded sufficient facts to substantiate their claim, the Court **DIMISSES** Plaintiffs' RESPA claim under 12 C.F.R. 1024.41(g).  Plaintiffs must allege facts asserting they have submitted a complete loan modification.

  2. Dual Tracking Claim

  Plaintiffs also allege a "dual tracking" claim under RESPA against BANA.  Dkt. # 1 ¶¶ 13.  Dual tracking occurs when the "lender actively pursues foreclosure while simultaneously considering the borrower for loss mitigation options."  *Gresham v. Wells Fargo Bank, N.A.*, 642 Fed. Appx. 355, 359 (5th Cir. 2016) (unpublished).  Similar to their above argument, Defendants assert that a complete loan application is a prerequisite

---

[4] "A complete loss mitigation application means an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower. A servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application."  12 C.F.R. 1024.41(b)(1).

ORDER – 7

to a dual tracking claim under RESPA.  Dkt. # 10 at 11.  Defendants cite a Fifth Circuit case for support.  *Id.* at 359 (stating that plaintiff's dual tracking claim under Section 1024.41(g) only applied once a complete loss mitigation application was received more than 37 days before the foreclosure schedule).[5]  The Court finds the Fifth Circuit persuasive and **DIMISSES** Plaintiffs' dual tracking claim.  Plaintiffs must allege facts asserting they have submitted a complete loan modification.

### 3. Tort Claim Under RESPA

Plaintiffs assert a common law tort claim under RESPA.  Dkt. # 1 ¶ 14.  Plaintiffs argue that "when servicers act unreasonably in handling a loan modification review . . . this conduct may give rise to common law tort claims."  *Id.*  Defendants move to dismiss this claim, arguing that RESPA contains no provision authorizing a common law tort claim.  Dkt. # 10 at 12.

Defendants are correct.  RESPA contains no provision authorizing Plaintiffs' claim.  The Court **DIMISSES** Plaintiffs' common law tort claim.

## D.     Consumer Protection Act Claim[6]

Plaintiffs allege that MERS was not a lawful beneficiary under the DOT and that MERS was not the "the owner or holder of the note."  Dkt. # 1 ¶ 42.  By acting as an "unlawful beneficiary," Plaintiffs argue that MERS violated the CPA and is thus prohibited from foreclosing on Plaintiffs' property.[7]  *Id.* ¶¶ 43-46.  Defendants argue that

---

[5] Plaintiffs also cite language from 12 C.F.R. 1024.41(d), which states "[i]f a borrower's complete loss mitigation application is denied . . . to the borrower . . . , a servicer shall state in the notice sent to the borrower . . . the specific. . . reasons for the servicer's determination . . .".  Dkt. # 1 ¶ 15.  However, this provision also requires the borrower to submit a complete loss mitigation application.

[6] Defendants cite an unpublished Washington Appellate case in their motion.  Dkt. # 10 at 15.  The Court reminds Defendants that Ninth Circuit Rule 36-3, which permits the citation of certain unpublished federal opinions, does not apply to unpublished decisions of the Washington Court of Appeals.  *Cont'l W. Ins. Co. v. Costco Wholesale Corp.*, No. C10-1987 RAJ, 2011 WL 3583226, at *2 (W.D. Wash. Aug. 15, 2011).

[7] "MERS is a system designed to facilitate securitization and create liquidity in the home mortgage market. Basically, MERS creates an environment in which securitization and

ORDER – 8

Plaintiffs' claim should be dismissed because the claim is a "misguided legal conclusion based on misinterpretation of Washington law." Dkt. # 10 at 12.

In order to prevail on a CPA claim, a plaintiff must demonstrate five distinct elements: (1) that the defendant engaged in an unfair or deceptive act or practice, (2) that the act occurred in trade or commerce, (3) that the act impacts the public interest, (4) that the plaintiff suffered injury to his or her business or property, and (5) that the injury was causally related to the unfair or deceptive act. *Panag v. Farmers Ins. Co. of Wash.*, 166 Wash. 2d 27, 37 (2009); *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 793 (1986).

Under the causation element, a plaintiff must establish that, "but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury." *Babrauskas v. Paramount Equity Mortg.*, No. C13-0494RSL, 2013 WL 5743903, at *4 (W.D. Wash. Oct 23, 2013) (quoting *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162 Wash. 2d 59, 84 (2007)). Defendants allege that Plaintiffs offer no facts demonstrating that, but for MERS' conduct, Plaintiffs would not be facing foreclosure due to their failure to pay. Dkt. # 10 at 18. As a result, Defendants argue that Plaintiffs do not identify an injury that is actionable under the CPA. *Id.* at 17. The Court agrees.

Plaintiffs have not alleged facts sufficient to plausibly infer liability under the CPA. *Babrauskas*, 2013 WL 5743903, at *3 ("Any damage to plaintiff's credit, cloud on his title, or monetary effect of the threat of foreclosure cannot be laid at MERS' door . . . plaintiff's failure to meet his debt obligations is the 'but for' cause of the default" and foreclosure."); *Burkart v. Mortg. Elec. Registration Sys., Inc.*, No. C11-1921RAJ, 2012 WL 4479577, at *5 (W.D. Wash. Sept. 28, 2012) ("If the Burkarts want to plead one or more claims based on MERS's improper designation as the beneficiary in their deed of

---

repackaging of debt is possible." *Bisson v. Bank of Am., N.A.*, 919 F. Supp. 2d 1130, 1134 n.1 (W.D. Wash. 2013) (citing *Bain v. Metropolitan Mortgage,* 175 Wash. 2d 83, 285 (2012)).

ORDER – 9

trust, they must provide sufficient allegations to establish that they have been injured."). Plaintiffs' failure to meet their debt obligation is the "but for" cause of their purported damages. Therefore, any alleged damages cannot be attributed to MERS. For these reasons, the Court **DISMISSES** Plaintiffs' CPA claim.

### E. Declaratory Judgment

Plaintiffs argue they are entitled to declaratory judgment, specifically asking the Court to determine the "rights, obligations and interest of the parties with regard to the Property." Dkt. # 1 ¶ 57. Plaintiffs allege that, due to HSBC's "deception by using an invalid Assignment," Defendants should be barred from foreclosing on the Property. *Id*. Additionally, Plaintiffs seek a judicial determination as to BANA's alleged mishandling of their loan modification application. *Id*. ¶ 58; Dkt. # 13 ¶ 17-19. Defendants move to dismiss this claim, arguing that no actual controversy exists. Dkt. # 10 at 18.

In order for a court to grant declaratory relief, there must first be "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Marin v. Lowe*, 8 F.3d 28 (9th Cir. 1993). Here, no controversy exists. As noted above, Plaintiffs lack standing to challenge the validity of their Assignment. *See Ukpoma*, 2013 WL 1934172, at *4; *Borowski,* 2013 WL 4522253, at *5. Therefore, Plaintiffs request that "Defendant be forever estopped from foreclosing" is denied. Dkt. # 1 ¶ 58.

Additionally, Plaintiffs' request for a judicial determination as to BANA's alleged mishandling of their loan modification is premature. The Court "cannot grant declaratory relief in the absence of a substantive cause of action." *Bisson v. Bank of Am., N.A.*, 919 F. Supp. 2d 1130, 1139-40 (W.D. Wash. 2013). Plaintiffs may have a claim for declaratory relief if they can properly plead a cause of action that establishes that BANA mishandled their loan modification. However, as discussed above, Plaintiffs have not properly pleaded their RESPA claims. The Court **DISMISSES** Plaintiffs' request for declaratory relief.

ORDER – 10

### F. Slander of Title Claim

Plaintiffs allege a slander of title claim against QLS. Dkt. # 1 ¶ 51. For support, Plaintiffs claim that QLS does not have the power or authority to proceed in foreclosing their property because QLS purportedly recorded two Notices of Trustee's Sale without being appointed as successor trustee for the DOT. *Id.* However, the public record shows that QLS did not record either Notice of Trustee's Sale until after the valid appointment was recorded in Snohomish County, Washington. Dkt. # 11-4. Therefore, the Court **DISMISSES** Plaintiffs' slander of title claim.

### G. FDCPA Claim

Plaintiffs allege a claim under 15 U.S.C. § 1692 for engaging in unfair debt collection practices. Dkt. # 1 ¶ 39. QLS moves to dismiss the claim, arguing that it is not a "debt collector" under the FDCPA, and therefore 15 U.S.C. § 1692e(5)'s prohibitions against false or misleading representations do not apply. Dkt. # 9 at 3-5. In addition, QLS argues that even if it were a debt collector within the meaning of the FDCPA, Plaintiffs do not allege "a deceptive act or misleading representation"—a statutory requirement for bringing a claim under the FDCPA. *Id.*

In order for a plaintiff to succeed on a claim under 15 U.S.C. § 1692e(5), the defendant must be a "debt collector."[8] 15 U.S.C. § 1692e(5); *Gelinas*, 2017 WL 553277, at *8; *Cameron v. Acceptance Capital Mort. Corp*, No. C13-1707 RSM, 2013 WL 5664706, at *4 (W.D. Wash. Oct. 16, 2013). As defined, a debt collector "does not include . . . any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6). The Western District of Washington has "consistently concluded that a non-judicial

---

[8] "Any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

ORDER – 11

foreclosure action by a trustee does not generally constitute debt collection under the FDCPA." *Gelinas*, 2017 WL 553277, at *8 (citing *Fagerlie v. HSBS Bank, NA*, No. C12-2205 RSM, 2013 WL 1914395, at *5 (W.D. Wash. May 8, 2013)).

Plaintiffs do not claim that their debt was not in default when QLS became the trustee and initiated the non-judicial foreclosure proceeding. Consequently, the FDCPA statute does not apply to QLS. Because the trustee, QLS, engaged in a non-judicial foreclosure, QLS is not a debt collector within the meaning of 15 U.S.C. § 1692. Accordingly, the Court **DISMISSES** Plaintiffs' FDCPA claim.

**H.    Leave to Amend**

Under Rule 15, "the court should freely give leave [to amend pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2). To determine whether justice requires leave to amend, the court considers: (1) the presence or absence of undue delay, (2) bad faith, (3) dilatory motive, (4) "repeated failure to cure deficiencies" in previous amendments, and (5) futility of the amendment. *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) (citing *Foman v. Davis*, 371 U.S. 178, 181, 83 (1962)). "Unless it is absolutely clear that no amendment can cure the defect . . . a *pro se* litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam).

Because the Court cannot conclude that "no amendment can cure the defect[s]" identified above, Plaintiffs are entitled to an opportunity to amend their Complaint. There is also no indication of undue delay, bad faith, dilatory motive, or that Plaintiffs have already amended their Complaint. Therefore, Plaintiffs may file an amended complaint no later than twenty (20) days of the date from this order.

**V.    CONCLUSION**

For the reasons stated above, the Court **GRANTS** BANA, HSBC, and MERS' Motion to Dismiss Plaintiffs' Complaint (Dkt. # 10) and **GRANTS** QLS' Motion to

ORDER – 12

Dismiss (Dkt. # 9).  **Within twenty (20) days from the date of this Order, Plaintiffs may file an amended complaint.  If Plaintiff fails to timely comply with this Order by filing an amended complaint that states a valid claim for relief, the Court will dismiss this action without leave to amend.**

DATED this 27th day of March, 2017.

*/s/ Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER – 13